# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARK L. RUTLEDGE, | : | |
| Petitioner, | : | Case No. 3:03CV171 |
| vs. | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Sharon L. Ovington |
| ALAN LAZAROFF, Warden, | : | |
| Madison Correctional Institution, | | |
| | : | |
| Respondent. | | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Suspecting that drugs were being sold from a particular apartment in the City of Dayton, Ohio, police officers executed a search warrant.  They found several individuals in the apartment, including Petitioner Mark L. Rutledge.  They also found plastic bags containing crack cocaine in a toilet, other controlled substances elsewhere in the apartment, and other items such as six operable firearms.  Rutledge did not physically possess any crack cocaine or firearms on his person, although he did possess just over $4,700.00 in cash.  (Doc. #4, Exhibit E at 3-4).  He was arrested and later indicted on several charges including one count of Possession of Crack Cocaine in amount greater than 25 grams but less than 100 grams.  *Id*. at Exh D.

In July 2000 a jury in the Montgomery County, Ohio Court of Common Pleas found

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Rutledge guilty of Possession of Crack Cocaine in amount greater than 25 grams but less than 100 grams, guilty of Tampering with Evidence, and not guilty of Having a Weapon while under a Disability.  (Doc. #4, Exhibits I, J).  The trial judge sentenced Rutledge to an eight-year term of imprisonment on the Possession conviction and a concurrent one-year term of imprisonment on the Tampering conviction.  *Id.*, Exh. N.

After unsuccessful appeals in the Ohio courts, Rutledge brings the present case through counsel seeking a Writ of Habeas Corpus under 28 U.S.C. §2254 claiming that his convictions violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution. This case is before the Court upon Rutledge's Petition (Doc. #1), Respondent's Return of Writ (Doc. #4), Rutledge's Traverse (Doc. #9), and the record as a whole.

## II.    APPLICABLE STANDARDS

In 1867 Congress extended to the federal courts the power to grant a Writ of Habeas Corpus when a person "is in custody in violation of the Constitution or laws or treaties of the United States...."  28 U.S.C. §2241(c)(3); *see Williams v. Taylor*, 529 U.S. 362, 374 (2000).  In 1996 Congress enacted the AEDPA[2] dramatically altering "the landscape for federal habeas corpus petitions."  *Rhines v. Weber*, 544 U.S. 269, 274 (2005).  "AEDPA 'requires heightened respect for state court factual and legal determinations.'"  *Fulcher v. Motley*, 444 F.3d 791, 824 (6th Cir. 2006)(citation omitted).

Under the AEDPA, codified at 28 U.S.C. §2254(d), "a petitioner is not entitled to relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her ... claim

_____

[2] Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214.

resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the United States Supreme Court, or (2) was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." *Arnett v. Jackson*, 393 F.3d 681, 685 (6th Cir. 2005). The phrases "contrary to" and

"unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if
> the state court applies a rule different from the law set forth in ... [Supreme Court]
> cases, or if it decides a case differently that we have done on a set of materially
> indistinguishable facts. The court may grant relief under the 'unreasonable
> application' clause if the state court correctly identifies the governing
> legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to
> the facts of a particular case. The focus on the latter inquiry is whether the state
> court's application of clearly established federal law is objectively unreasonable ...
> and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted); *see Arnett*, 393 F.3d at 685.

A "state court's application of federal law is unreasonable and habeas relief may be

granted if the 'state court decision is so clearly incorrect that it would not be debatable among

reasonable jurists.'" *Joshua v. DeWitt*, 341 F.3d 430, 436 (6th Cir. 2003)(citation omitted). When

conducting this reasonableness inquiry, the AEDPA prohibits granting a Writ of Habeas Corpus

based on a federal court's *de novo* review of a state-court decision. *Price v. Vincent*, 538 U.S.

634, 639 (2003); *see Joshua*, 341 F.3d at 436; *see also Rockwell v. Yukins*, 341 F.3d 507, 511 (6th

Cir. 2003).

## III.    RUTLEDGE'S FIRST CLAIM

### A.    <u>Sufficiency or Manifest Weight</u>

Rutledge's first ground for relief claims:

> The Evidence in support of Petitioner's convictions was insufficient and/or

against the manifest weight of the evidence in violation of the 14th Amendment to
the United States Constitution.

> Supporting Facts:    The evidence presented at trial only demonstrated Mr.
> Rutledge's 'mere presence' at the scene and location where
> drugs were found.  Two other individuals were present in
> the bathroom where the money and drugs were found and
> Mr. Rutledge was not found in actual possession of any
> drugs.  One of the bathtub occupants testified at trial that the
> cash that was clogging up the toilet (which Mr. Rutledge
> was found standing next to) was his, and that he (not Mr.
> Rutledge) had attempted to flush it down the toilet.

(Doc. #1 at ¶12).  Rutledge contends, "A conviction that is based upon a Defendant's 'mere

presence' does not constitut[e] sufficient evidence to support a 'constructive possession' element

of drug possession and tampering with evidence charges, and, in the alternative, is against the

manifest weight of evidence in violation of the 14th Amendment to the United States

Constitution."  (Doc. #9 at 5).

As an initial matter, Respondent contends that habeas corpus relief is not available based

on a challenge to the manifest weight of the evidence.

Rutledge, in contrast, contends that federal courts do consider manifest-weight claims in

habeas Petitions.  He then reasons:

> Evidence may be sufficient to support a conviction, and yet, the conviction
> may be against the manifest weight.  State v. Thompkins, 78 Ohio St.3d 380
> (1997).  Therefore, it is concluded that there was sufficient evidence to support Mr.
> Rutledge's drug possession conviction, then based upon the ... testimony of
> codefendant Boyd coupled with the fact that the other parties in the house received
> the warning and could have flushed the drugs prior to the police entering the
> apartment along with the fact that the evidence showed that the SWAT team knew
> Mr. Rutledge's location in the apartment (i.e., at the window) within [a] 10-14
> second period before he went into the bathroom, then the verdict was against the
> manifest weight of the evidence[.]  State v. Schaim, 65 Ohio St.3d 51 (1992); State
> v. Childs, 88 Ohio St.3d 558 (2000).  Contrary to Respondent's position in relying
> on an Eleventh Circuit case, federal courts do consider 'manifest weight' claims in
> habeas petitions.  See, e.g., Moore v. Tate, Case No. C-3-86-366, 1988 WL 101273

4

(S.D. Ohio 1988)(Merz, M.J.)...; <u>U.S. ex rel. Chillers v. Welborn</u>, 1994 WL53761 (N.D. Ill. 1994)....

(Doc. #9 at 7-8). These contentions and cases fail to convince that manifest-weight test applies on federal habeas review.

Under Ohio law, a broader test applies to claims challenging the manifest weight of the evidence compared to the test applicable to sufficiency-of-evidence claims under the Fourteenth Amendment. *See State v. Thompkins*, 78 Ohio St.3d 380, 387-88 (1997), *superceded in part by state constitutional amendment, State v. Smith*, 80 Ohio St.3d 89 (1997); *see also State v. Martin*, 20 Ohio App.3d 172 (1983); *State v. Thompson*, 127 Ohio App.3d 511 (1998); *cf. Tibbs v. Florida*, 457 U.S. 31, 42-43 (1982).[3] The distinction was thoroughly discussed in *Echols v. Houck*, 2005 WL 1745475 at *3 (S.D. Ohio, July 25, 2005) as follows:

> In essence, sufficiency, which implicates due process concerns, tests the adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law, which may not be resolved by the reviewing court through weighing the evidence. In contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a 'thirteenth juror' to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses. *Thompkins*, 678 N.E.2d at 546-47; *see also Tibbs*, 457 U.S. at 41-42; *Martin*, 485 N.E.2d 720-21.

> As the Supreme Court explained in *Tibbs*, 457 U.S. at 43, unlike a reversal on the ground of insufficient evidence, a reversal based on the weight of the evidence 'does not mean that acquittal was the only proper verdict.' Rather, a reversal based on the weight of the evidence 'can occur only after the State both has presented sufficient evidence to support a conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment. *Id*. at 42-43.

---

[3] For an example of the many recent unpublished Ohio cases recognizing this distinction see *State v. Braxton*, 2006 WL 1644268 at *2-*3 (Ohio Ct. App., June 15, 2006).

5

A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, law, or treaties of the United States, 28 U.S.C. §2254(a).  A federal court may not issue a writ of habeas corpus 'on the basis of a perceived error of state law.'  *Pulley v. Harris*, 465 U.S. 37, 41 ... (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6ᵗʰ Cir.), *cert. denied*, 488 U.S. 866 ... (1988).

This discussion led the District Court in *Echols* to dismiss the petitioner's claim that his conviction was against the manifest weight of the evidence as not implicating a federal constitutional concern but instead only raised an issue of state law that was not cognizable upon federal habeas review.  *Id*.

The same reasoning, cases, and result apply to the extent Rutledge seeks to raise a claim that his conviction for Possession of Crack Cocaine was against the manifest weight of the evidence.  *See id*. (and cases cited therein).  Yet, Rutledge's first ground for relief is not subject to complete dismissal because he also raised a cognizable challenge to the sufficiency of the evidence under the Fourteenth Amendment to the United States Constitution.  Respondent appears to agree, by citing *Jackson v. Virginia*, 443 U.S. 307 (1979), and acknowledging, "Rutledge's 'sufficiency of the evidence' claim is arguably cognizable in federal habeas corpus as a claim made under the Due Process Clause of the Fourteenth Amendment...."  (Doc. #4 at 10).

Accordingly, Rutledge's manifest-weight claim must be dismissed.  The analysis thus turns to his claim that the evidence was insufficient to support his conviction for Possession of Crack Cocaine.

### B.    The Parties' Contentions and Applicable Standards

Respondent contends that when the evidence is reviewed under the standards set forth in *Jackson* the evidence admitted at trial was constitutionally sufficient to establish Rutledge's guilt of Possession of Crack Cocaine.  Respondent further contends that the Ohio Court of Appeals'

decision applying the *Jackson* standards was not contrary to, and did not involve an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, and was not based on an unreasonable determination of facts.

Rutledge contends that the evidence was insufficient to establish he constructively possessed the crack cocaine found in the toilet; that if he constructively possessed the crack cocaine, then so did everyone else in the apartment; and that, for various reasons, the Ohio Court of Appeals' rationale was "difficult to comprehend...' (Doc. #9 at 6 n.1).

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Fiore v. White,* 531 U.S. 225, 228-29 (2001).

Prior to the enactment of the AEDPA, *Jackson v. Virginia* required courts conducting federal habeas review to analyze claims of insufficient evidence by determining if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 324. This standard reserved to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Jackson*, 443 U.S. at 318-19; *see also Herrera v. Collins*, 506 U.S. 390, 401-02, (1993); *Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). Circumstantial evidence was sufficient to support a conviction and such evidence did not have to remove every reasonable hypothesis except that of guilt. *See Jackson*, 443 U.S. at 318-19, 326; *see also Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *see also Tilley v. McMackin*, 989 F.2d 222, 225 (6th Cir. 1993).

As discussed previously, *supra*, §II, the AEDPA implemented  higher standards of review in federal habeas cases.   These standards apply as follows to claims of insufficient evidence raised under *Jackson v. Virginia*:

> Because *Jackson* claims are mixed questions of law and fact..., a writ of habeas corpus may be issued for evidence insufficiency only if state courts have unreasonably applied the *Jackson* standard.  Federal review of these claims therefore now turns on whether the state court provided fair process and engaged in reasoned, good-faith decision making when applying *Jackson's* 'no rational trier of fact' test....  [Section] 2254 'requires federal courts to take into account the care with which the state court considered the subject....  A responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment.'

*Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1997); *see Brazzell v. Smith*, unreported, 1999 WL 1204795 at **6 (6th Cir., Dec. 7, 1999); *see also Aldrich v. Bock*, 327 F.Supp.2d 743, 762 (E.D. Mich. 2004); *Welch v. Burke,* 49 F.Supp.2d 992, 1000 (E.D. Mich. 1999).[4]  Given this, it is significant to note that one way a state court decision can be objectively unreasonable under §2254(d) is by failing "to appreciate or even consider the critical issues involved...." in the petitioner's case.  *Washington v. Hofbauer*, 228 F.3d 689, 703 (6th Cir. 2000)(discussing ineffective assistance of counsel).

### C.      The Ohio Court of Appeals' Decision

---

[4]  It appears that the United States Court of Appeals for Sixth Circuit has yet to directly address whether §2254(d) permits a *de novo* review of *Jackson* claims.  *See Brazzell v. Smith*, unreported, 1999 WL 1204795 at **6 (6th Cir. 1999).  Ordinarily, when *Jackson* claims are dismissed in federal habeas cases, the basis for dismissal is that even a *de novo* review of the record reveals sufficient evidence to support the petitioner's conviction(s).  *E.g., Scott v. Elo*, 302 F.3d 598, 602-03 (6th Cir. 2002); *Sanford v. Yukins*, 288 F.3d 855, 860-63 (6th Cir. 2002).  However, this Judicial Officer concludes that §2254(d)'s unreasonableness standard applies to *Jackson* claims for the reasons stated in *Acevedo*, 106 F.3d at 197-200; and because in *Scott v. Elo*, the Sixth Circuit generally recognized that habeas claims (including a *Jackson* claim) must be viewed under §2254(d)'s unreasonableness standard, *Scott*, 302 F.3d at 602 ("With these standards in mind, we consider each of Scott's claims in turn"); and because the Supreme Court has emphasized (although in a non-*Jackson* case) the need to apply §2254(d)'s unreasonableness standard in federal habeas review instead of conducting a *de novo* review, and that a federal court's disagreement with the state court's application of Supreme Court case law fails to show objective unreasonableness under §2254(d), *see Price*, 538 U.S. at 638-43.

The Ohio Court of Appeals recognized the distinction between sufficiency-of-evidence claims and manifest weight claims, (Doc. #4, Exh. R at 6), and rejected each claim as follows:

Rutledge was charged with possession of crack cocaine in violation of R.C. 2925.11(A), which provides that '[no] person shall knowingly obtain, possess, or use a controlled substance.' 'Possess' and 'possession' are statutorily defined as 'having control over a thing or substance, but [possession] may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.' R.C. 2925.01(K). Possession can be actual or constructive. *State v. Mann* (1993), 93 Ohio App.3d 301, 308.... While the state argued at trial that Rutledge had had constructive possession of the crack cocaine in the toilet, we believe the evidence also lent itself to the theory that Rutledge had recently had actual possession of the crack cocaine. Because the state did not argue actual possession and the jury was only instructed on constructive possession, we will examine the evidence only in light of the theory of constructive possession.

A person has constructive possession of a thing when he is able to exercise dominion and control over it. *Id*., citing *State v. Wolery* (1976), 46 Ohio St.2d 316, 332.... Readily usable drugs that are found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of the drugs. *State v. Barr* (1993), 86 Ohio App.3d 227, 235....

The evidence in the record reveals that Rutledge was seen looking out the apartment window as the SWAT team approached and that fourteen or fifteen seconds later, he was found in front of the toilet. The bathroom was about four or five steps from the bathroom window where Rutledge was seen. [Officer] Johns saw Rutledge taking money from his front pouch and throwing it into the toilet. The toilet had been flushed and was backing up and almost flooding. Although two other individuals were also in the bathroom, one, Boyd, was lying down with his head 'away' from the toilet and his hands under his back. The other individual was sitting 'almost on top' of Boyd's head. No one other than Rutledge was seen moving his hands or throwing anything into the toilet.

Police officers testified that the toilet water was clear and that there was no evidence of any human waste, even after the toilet was knocked off of its base. One officer, Mark Auricchio, testified that he was 'sure that [the crack cocaine] hadn't been lodged in [the toilet] for any long period of time' because there were three people in the apartment and thus the bathroom would have been 'used quite frequently.' He stated that his conclusion was supported by the following facts: it was 'a substantial amount of crack cocaine,' there were people in the bathroom when the SWAT team found them, the toilet water was running and was not discolored as if someone had just used the toilet; and in his

9

experience, he had previously encountered people trying to dispose of evidence in toilets. Another police officer, Bradley A. Barnett, also stated that due to the number of people inside the apartment, he believed the crack cocaine had been flushed at about the time of the SWAT team's entry.  Barnett also testified that using the toilet to destroy evidence is a 'very common practice' that he has seen many times during the executions of search warrants.

Although Thomas testified that Rutledge had received approximately $4,000 from his birthday and a loan, it is unclear why Rutledge would have been flushing such 'innocent' money down the toilet, as witnessed by Johns.  Further, although Boyd testified that Rutledge had not possessed or flushed the crack cocaine, Boyd's own testimony contained some inconsistencies, such as whether Rutledge had been in the bathtub before the SWAT team entered the bathroom or whether the police officers had put Rutledge in the bathtub.  Boyd's testimony also included an admission of previous convictions for possession of crack cocaine, descriptions of the apartment as 'a place for us to get high and sell drugs' and as the place they would go when they had drugs to sell, references to his own 'drug usage,' and his statement that he is 'usually in drugs.'

After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice when it convicted Rutledge on the count of drug possession.  Although his constructive possession of the drugs is supported by circumstantial evidence, the supreme court has explicitly stated that direct and circumstantial evidence have the same probative value.  *Jenks*, 61 Ohio St.3d 259....  Thus, we will not concluded that Rutledge's conviction was against the manifest weight of the evidence.

Rutledge was also charged with tampering with evidence in violation of R.C. 2921.12(A)(1), which provides '[no] person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be installed, shall ... [a]lter, destroy, conceal, or remove any ... thing, with the purpose to impair its value or availability as evidence in such proceeding or investigation[.]'

The state produced evidence that, as the SWAT team formed a line to enter the apartment, it began playing an audio tape via a bull horn that stated, 'Dayton Police. Search warrant' and then named the address and asked the occupants to open the door. The tape repeated itself between twenty and thirty times.  The tape could be heard at least 150 to 200 feet away from the apartment.  Further, the SWAT team saw Rutledge look out the window at them as they approached the apartment.  Thus, the jury did not lose its way in concluding that Rutledge knew that an official proceeding or investigation was in progress or was about to be instituted.  Further, as we concluded *supra*, Rutledge's conviction for possessing the drugs found in the toilet was not against the manifest weight of the evidence.  Thus, we cannot conclude that the jury lost its way in concluding that

Rutledge had concealed the crack cocaine in the toilet to impair its availability as evidence.

Having concluded that the convictions were not against the manifest weight of the evidence, we perforce also conclude that the convictions were supported by sufficient evidence.

(Doc. #4, Exh. R at 7-10).

### D.     Analysis

The Ohio Court of Appeals fully considered and rejected Rutledge's insufficient-evidence claim.  In doing so, the Ohio Court of Appeals identified and applied the correct standards set forth in *Jackson v. Virginia*.  *See* Doc. #4, Exh. R at 7.  The Ohio Court of Appeals also cited to *State v. Jenks*, 61 Ohio St.3d 259 (1991), an Ohio Supreme Court case identifying and applying the *Jackson* standards to a claim of insufficient evidence.  *Id*. at 259-60, 273-80.  The AEDPA-driven issue then is whether the Ohio Court of Appeals' application of the *Jackson* standards was reasonable.

Although the Ohio Court of Appeals mainly discussed Rutledge's challenges to the evidence under the manifest-weight standards, its final conclusion – that the manifest weight of the evidence supported his conviction and as a result the evidence was sufficient to support his conviction – was not an unreasonable application of the standards of *Jackson v. Virginia*.  The Court of Appeals' application of the broader manifest-weight standard gave Rutledge a better chance of obtaining a reversal of his conviction than the *Jackson* sufficiency standards because under the former, the Court of Appeals re-weighed the evidence, sitting effectively as the thirteenth juror.  *See Echols*, 2005 WL 1745475 at *3.  No such weighing is involved under *Jackson*, which instead mandates drawing to all reasonable inferences in the prosecution's favor, and determining whether any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319, 324.  Consequently, by re-weighing the evidence, there was some chance that the Ohio Court of Appeals could have drawn crucial inferences in Rutledge's favor.  Although it did not draw such inferences when evaluating the weight of the evidence, *Jackson* similarly mandated the Ohio Court of Appeals to draw all inferences in the prosecution's favor.  Consequently, the Ohio Court of Appeals' conclusion that the manifest weight of the evidence supported Rutledge's convictions, which likewise led the Court of Appeals to conclude that the evidence was sufficient to support his convictions, did not involve an unreasonable application of *Jackson* standards.

As to Rutledge's specific contention that the evidence was insufficient to support his conviction for Possession of Crack Cocaine, the AEDPA precludes a *de novo* review of the evidence under the *Jackson*.  The AEDPA instead mandates the more deferential view explained above, *supra*, §III(B).  A review of the Ohio Court of Appeals' opinion under these more deferential standards reveals that the Court of Appeals fully considered Rutledge's arguments, and engaged in good-faith decisionmaking when assessing whether the evidence supported his convictions.  The decision constituted a a "responsible, thoughtful answer reached after a full opportunity to litigate...," *Acevedo*, 106 F.3d at 199, and as such, the AEDPA requires a rejection of Rutledge's sufficiency-of-evidence claims.  *See id*; *see also Brazzell*, 1999 WL 1204795 at **5-**6; *Copeland v. Walker*, 258 F.Supp.2d 105, 117-18 (E.D.N.Y. 2003); *Welch*, 49 F.Supp.2d at 1000.

"The Supreme Court has cautioned that the sufficiency standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002) (quoting in part *Jackson*, 443 U.S. at 324

n.16)(emphasis removed). The Ohio Court of Appeals did this by setting forth the Ohio statutes prohibiting Possession of Crack Cocaine, Ohio Rev. Code §2925.11(A), and prohibiting tampering with evidence in violation of Ohio Rev. Code §2921.12(A)(1). (Doc. #4, Exh. R at 7-10). The Ohio Court of Appeals also set forth Ohio's statute defining "possession," Ohio Rev. Code §2925.01(K), and discussed the Ohio cases pertinent to determining whether Rutledge had constructive possession of the crack cocaine found by police in baggies in the toilet, perhaps most notably *State v. Wolery*, 46 Ohio St.2d 316 (1976). (Doc. #4, Exh. R at 7-10).

The critical issue regarding constructive possession in this federal habeas case, controlled as it is by the AEDPA, is not whether this Judicial Officer agrees or disagrees with the Ohio Court of Appeals' application of the *Jackson* standards but is instead – viewed through the lens of §2254(d) – whether the Ohio Court of Appeals' decision involved a fair process and reasoned, good-faith decision making when applying the *Jackson* standards. *See Acevedo*, 106 F.3d at 199. Although there may be room for subjective disagreement between jurists about whether the facts relied on by the Ohio Court of Appeals were sufficient under the *Jackson* standards to support the conclusion that Rutledge constructively possessed the crack cocaine, the Ohio Court of Appeals identified the correct principles under *Jackson*, *see* Doc. #4, Exh. R at 7, and applied them to the particular evidence presented during trial. Such reasoned, good-faith decision making cannot be characterized as objectively unreasonable under §2254(d), and cannot be the basis for federal habeas relief. *See Acevedo*, 106 F.3d at 199.

Accordingly, Rutledge's first ground for relief lacks merit

## IV. RUTLEDGE'S SECOND CLAIM

Rutledge's second ground for relief claims:

13

The trial court's refusal to provide jury instruction that mere presence at the scene does not constitute sufficient evidence to support a conviction violated Petitioner's rights under the 14th Amendment to the United States Constitution.

<u>Supporting Facts</u>:    Petitioner's trial counsel requested a jury instruction concerning constructive possession which stated that a defendant's mere presence in an apartment in which drugs and criminal tools are found in constitutes insufficient evidence of his possession of the contraband.  The trial [judge] denied the request.

(Doc. #1 at ¶12).

Respondent argues, "Rutledge is unable to prove the omission of the jury instruction requested by Rutledge, or alternatively, the jury instruction that was actually given, so infected the entire trial so as to render his convictions a violation of due process."  (Doc. #4 at 16).

"Errors in jury instructions must be so egregious that they render the entire trial fundamentally unfair.  Without such a showing, no constitutional violation is established and the petitioner is not entitled to relief."  *White v. Mitchell*, 431 F.3d 517, 533 (6th Cir. 2005) (citing *Austin v. Bell,* 126 F.3d 843, 846 (6th Cir. 1997)); *see Henderson v. Kibbe,* 431 U.S. 145, 154 (1977); *see also Cupp v. Naughten,* 414 U.S. 141, 147 (1973).  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.  The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process'..., not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'"  *Kibbe*, 431 U.S. 145, 154 (1977) (quoting in part *Naughten*, 414 U.S. at 147).

Rutledge, through his trial attorney, requested the following instruction regarding constructive possession:

14

> Knowledge of illegal goods on one's property is sufficient to show constructive possession.  Whether the defendant owns, leases, or occupies the premises, his mere presence in an apartment in which drugs and criminal tools are found is insufficient evidence of his possession of the contraband.

(Doc. #9 at 8).

Rutledge contends that the jury instructions did not even mention the words "mere presence" and that the words "mere access" included in the jury instruction is far removed from "mere presence."  (Doc. #9 at 8-9).

The Ohio Court of Appeals explained that the trial court denied the requested jury instruction, "finding that the first sentence was inapplicable to the case because there was no evidence that the apartment was Rutledge's property.  The trial court also concluded that the entire proposed instruction was quoted from an Eighth Appellate District case which was not binding on the court.  The trial court opted, instead, to use the language from Ohio Jury Instructions and one of our cases.  In her instructions to the jury, the trial judge stated as follows:

> Possess means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.
>
> Constructive possession is shown when an individual can exercise dominion and control over the object, whether or not it is in his immediate physical possession."

(Doc. #4, Exh. R. At 15).

The Ohio Court of Appeals then ruled as follows:

> We ... cannot conclude that the trial court abused its discretion when it used its own language instead of the language in the second sentence of Rutledge's requested instruction.  His requested instruction essentially stated that, to prove that Rutledge possessed the drugs, the state needed to establish more than his mere presence in the apartment where the drugs were found.  The first sentence given by the judge told the jury that it could not infer that Rutledge had possessed the drugs merely because he had access to the drugs while occupying the apartment.  Thus, the court used it own language to communicate the same legal principle contained

15

in the second sentence of Rutledge's requested instruction.

(Doc. #4, Exh. R at 15-16).

Rutledge has not cited to a United States Supreme Court case mandating a "mere presence" jury instruction in constructive-possession cases or holding that the absence of such an instruction along with the presence of a "mere access" jury instruction resulted in the denial of a fundamentally fair trial in violation of the Fourteenth Amendment. *See* Doc. #1, ¶12; *see also* Doc. #9 at 8-9.

Although Rutledge emphasizes the absence of the specific phrase "mere presence" in the jury instructions, the Ohio Court of Appeals correctly recognized that the jury instructions sufficiently conveyed the same legal principle – *i.e.*, the need to show more than mere presence in the apartment to prove constructive possession.  In addition, the phrase "mere access" apparently derived from the Ohio statute defining possession, which provided, "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."  Ohio Rev. Code §2905.01(K).  Rutledge, moreover, does not contend that this instruction conflicted with the model Ohio Jury Instructions upon which the Ohio Court of Appeals relied to support its approval of the "mere access" instruction.  *See* Doc. #4, Exh. R at 14-16; *see also* Doc. #9 at 8-9.  Because Rutledge has not shown that the "mere access" instruction was incorrect as a matter of Ohio law, his due process challenge to the jury instructions likewise lacks merit.  "Where the trial court instructs the jury in accordance with state law and sufficiently addresses the matters of law at issue, no error results and the petitioner is not entitled to habeas relief."  *White*, 431 F.3d at 534-35 (citing *Sanders v. Freeman,* 221 F.3d 846, 860 (6th Cir. 2000)).

Accordingly, Rutledge's second ground for relief lacks merit.

16

## V.      RUTLEDGE'S THIRD CLAIM

Rutledge claims in his third ground for relief that his trial counsel provided ineffective assistance in violation of his rights under the Sixth Amendment. (Doc. #1 at ¶12).

To establish constitutionally ineffective assistance of counsel ("IAC"), Rutledge must show that counsel's acts, errors, or omissions fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). This demanding standard requires Rutledge to establish that (1) his counsel provided deficient performance and (2) this deficient performance prejudiced his defense so as to render his trial fundamentally unfair and the result unreliable. *Strickland*, 466 U.S. at 687.

The first *Strickland* prong mandates a highly deferential review of trial counsel's performance. *Id*. at 689. "[A] court must engage in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id*. at 689. When trial counsel's acts or omissions constituted trial strategy, his or her performance was not constitutionally deficient. *Id*.

The second *Strickland* prong requires that trial counsel's "errors were so serious as to deprive ... [him] of a fair trial, a trial whose result is reliable." *Broom v. Mitchell*, 441 F.3d 392, 408 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 687).

Because the AEDPA precludes a *de novo* review of constitutional claims, *see Price*, 538 U.S. at 639, Rutledge carries a heavy burden. "The Supreme Court has made clear that post-AEDPA claims of ineffective assistance of counsel brought by habeas petitioners will succeed only in very limited circumstances.... For [the petitioner] to succeed..., he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under

§2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  Rather, he must show that the ... [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Payne v. Bell*, 418 F.3d 644, 665 (6th Cir. 2005).

A review of the Ohio Court of Appeals' opinion reveals that the Court accurately described the *Strickland* standards.  *See* Doc. #4, Exh. R at 18-19.  The remaining issues therefore concern whether the Ohio Court of Appeals unreasonably applied these standards to Rutledge's specific IAC claims.  *See Payne,* 481 F.3d at 665; *see also Hill v. Mitchell*, 400 F.3d 308, 323-24 (6th Cir. 2005).

Rutledge first claims that his trial counsel was ineffective by failing to object to the prosecution's elicitation of testimony from a police officer concerning Rutledge's silence in response to a question.  The police officer testified that when he found a large sum of money on Rutledge, he asked Rutledge if he had a job.  The police officer further testified that Rutledge did not reply.  (Doc. #9 at 9).  Rutledge contends that the Ohio Court of Appeals erred by merely assuming that trial counsel's failure to object to this part of the police officer's testimony was mere trial strategy.  This contention lacks merit because the Ohio Court of Appeals did more than assume that counsel's failure to object was trial strategy.  The Ohio Court of Appeals explained:

> We believe the attorney's failure to object to that information was likely a trial strategy decision, because his attorney knew, at the time state elicited this information, that he planned to call Thomas and Boyd during the presentation of the defense case.  The testimonies of Thomas and Boyd offered legal explanations of why Rutledge had had such a large sum of money.  Thus, the attorney likely decided not to draw the jury's attention to Rutledge's silence with an objection and planned, instead, to present evidence which would explain the origin of the money.  We will not second-guess the attorney's strategic decision.

(Doc. #4, Exh. R at 19).  This analysis contains more than a mere assumption of trial strategy.  The Ohio Court of Appeals provided specific and meaningful reasons in support of its trial-strategy

18

finding.  In so doing, the Ohio Court of Appeal reasonably applied *Strickland*, which requires only a "fair assessment of attorney performance..., 466 U.S. 689, and which mandates that courts considering IAC claims make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689.  Rutledge's first IAC claim therefore lacks merit.

Rutledge next claims that trial counsel was ineffective by failing to object to the considerable testimony about the presence of numerous firearms in the apartment, since "none of the weapons had anything to do with any charged [sic] that Mr. Rutledge received...." (Doc. #9 at 10).  This claim lacks merit because Rutledge was charged with having a weapon under a disability.  To prove this charge, the state was required to prove, in part, that Rutledge possessed a weapon.  *See* Ohio Rev. Code §2923.13(A).  In addition, the Ohio Court of Appeals correctly recognized the absence of prejudice caused by counsel's failure to object to the firearm evidence due to the jury's finding of not guilty on the charge of having a weapon while under a disability.  This not-guilty finding, in turn, also means that the jury likely did not view Rutledge as a violent person or a bad character when reaching its verdicts; if it had viewed Rutledge in this manner, it would likely have found him guilty on all charges.  Because the jury found Rutledge not guilty on one charge, and because the Ohio Court of Appeals reasonably recognized this as basis for finding no prejudice in counsel's failure to object, it cannot be concluded that the Ohio Court of Appeals' unreasonably applied the prejudice

prong of *Strickland* to reject Rutledge's second IAC claim.

Rutledge next argues that trial counsel provided ineffective assistance by not objecting to testimony that a certain gun, a Colt, had been stolen from Virginia.  He argues, "There being no evidence where the gun came from as related to Mr. Rutledge's charge.  That being the case, counsel failed in an essential duty in not objecting."  (Doc. #9 at 10).  The Ohio Court of Appeals rejected this claim because "the state did not specifically allege that Rutledge had stolen the handgun.  Further, we do not believe that there is a reasonable probability that, had Rutledge's attorney objected to this evidence, the result of his trial would have been different because he was not convicted of having the Colt while under a disability."  (Doc. #4, Exh. R at 20-21).  This was not an unreasonable application of *Strickland*.  The jury's not-guilty finding on the charge of having a weapon while under a disability reveals that trial counsel's failure to object to the stolen-Colt testimony worked no prejudice upon Rutledge, not only because of the jury not-guilty finding on this charge, but also because the not-guilty finding further shows that the jury did not convict Rutledge of criminal offenses because he was a bad character.  Rutledge third IAC claim therefore lacks merit.

Rutledge also claims that counsel was ineffective when he failed to request a jury instruction limiting consideration of Rutledge's prior conviction only to the determination of whether he possessed a weapon while under a disability.  The Ohio Court of Appeals found no merit in this claim, explaining:

> We do not believe that there is a reasonable probability that, had the jury been given the limiting instruction, the result of the trial would have been different. Rutledge implies that the jury convicted him because it believed he is a 'bad' person. Had the jury truly convicted him solely because it believed he had a poor character, it seems that the jury would have likely convicted him of all of the charges, including the count of having a weapon while under a disability.  The jury chose, however, not to convict him of the weapons count.

(Doc. #4, Exh. R at 21). This was not an unreasonable application of *Strickland* again because the Ohio Court of Appeals reasonably found an absence of prejudice in light of the jury's not guilty finding on the charge of having a weapon while under a disability and because, in light of the jury's not-guilty finding, it was likely that the jury did not convict Rutledge based on a belief that he was a bad character.

Rutledge lastly argues that he was prejudiced by the cumulative effect of his trial counsel's errors. When viewed together, the alleged errors by Rutledge's attorney fail to show either that his performance fell below the wide range of deference it was due under *Strickland*. A review of the trial court transcripts shows that trial counsel was actively and professionally engaged in Rutledge's defense. He presented a thoughtful opening statement outlining a defense theory that explained Rutledge's innocent presence at the apartment, Rutledge's lack of legal ownership or interest in the apartment, his lack of possession of the crack cocaine found in the toilet, his lack of connection to the firearms (particularly the Colt), his innocent reasons for possession large amount of cash, and various reasons to doubt the prosecutor's opening statements. *See* Doc. #4, Exh. K at 17- 25. Rutledge's attorney cross-examined each of the state's witnesses and presented testimony of Thomas Rutledge – Petitioner's brother – who explained that he had attended a birthday party where his brother had received money as birthday gifts amounting to between fifteen to seventeen hundred dollars in cash. *Id*. at 320-21. Thomas Rutledge also testified that he gave his brother twenty-five hundred dollars in cash to help him buy a car. *Id*. at 322-23. Trial counsel also presented the testimony of James Boyd, who was in the bathroom where the crack cocaine was found. Boyd testified that he – not Rutledge – had attempted to flush money down the toilet, and that Rutledge did not possess any cocaine or a weapon when he was in the apartment or weapon. *Id*. at 356, 358, 361-

21

62.  Trial counsel  presented a well-reasoned, although unsuccessful, oral argument in support of a motion to dismiss at the close of the evidentiary phase of trial, *id*. at 330-32, and a well-reasoned closing argument, *id*. at 409-32.  During closing argument, Rutledge's trial counsel specifically emphasized why the evidence did not support the conclusion that Rutledge constructively possessed the crack cocaine that was found in the toilet including why the evidence did not support the prosecution's theory of constructive possession.  *Id*. at 419-25.  Although the jury ultimately did not agree with Rutledge's trial counsel's closing arguments as to the charges of Possession of Crack Cocaine and Tampering with Evidence, the trial record reveals that counsel's performance throughout the trial fell within the wide range of reasonable professional assistance Rutledge was constitutionally due, *see Strickland*, 466 U.S. at 689, and that the errors Rutledge now claims did not have the cumulative effect of rendering the jury's verdicts unreliable,  *see Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) ("because Gillard's individual assignments of error would not support habeas relief, and the cumulative effect thereof is likewise insufficient.").

Accordingly, Rutledge's third ground for relief lacks merit.

## VI.    RUTLEDGE'S FOURTH CLAIM

Rutledge claims in his fourth ground for relief that his appellate counsel provided constitutionally ineffective assistance.  He asserts: "Appellate counsel, who was the same as trial counsel, failed to raise as error the fact that he elicited testimony from a state's witness concerning statements by unidentified witnesses to the effect that Mr. Rutledge possessed drugs and weapons earlier on the day of his arrest.  Appellant's counsel also failed to stipulate to Rutledge's 'disability' with regard to the having a weapon under a disability count."  (Doc. #1 at ¶12).  The state's witness involved in this claim is Detective Barnett.  (Doc. #9 at 11-17).

22

When rejecting Rutledge's claim of ineffective assistance of appellate counsel, the Ohio Court of Appeals cited to *State v. Frazier*, 96 Ohio St.3d 189, 191 (2002), an Ohio Supreme Court case applying the *Strickland* standards and stating, "To show ineffective assistance, [defendant] must prove that his counsel were deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had he presented those claims on appeal." *Id*. This correctly identified the standard applicable to claims of ineffective assistance of appellate counsel. *See McFarland v. Yukins*, 356 F.3d 688, 710-11 (6th Cir. 2004). Thus, the remaining issue is whether the Ohio Court of Appeals unreasonably applied this standard to Rutledge's claims of ineffective assistance of appellate counsel.

The Ohio Court of Appeals first concluded, "Asserting counsel's eliciting the hearsay testimony in question as ineffective assistance of counsel would not have created a reasonable probability of reversal [on direct appeal] of the possession and tampering charges." (Doc. #4 at 2).

By finding no prejudice flowing from Detective Barnett's testimony, the Ohio Court of Appeals essentially found no merit in the underlying claim that Rutledge's appellate counsel, in Rutledge's view, should have raised. This was a proper consideration when resolving whether an appellate counsel provided constitutionally ineffective assistance. "Failure of appellate counsel to raise an issue can amount to constitutionally ineffective assistance.... However, counsel has no obligation to raise every possible claim..., and the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment.... 'Counsel's performance is strongly presumed to be effective.'... Even if counsel made a mistake, the mistake might not be serious enough to have affected the defendant's constitutional right to counsel." *McFarland*, 356 F.3d at 710-11 (citations omitted).

Although counsel omitted on Rutledge's direct appeal the claim that he provided constitutionally ineffective assistance at trial by eliciting certain testimony from Detective Barnett, this claim was not as strong as at least some of the claims raised on direct appeal, particularly his challenge to the manifest weight of the evidence and the sufficiency of the evidence.  *See* Doc. #4, Exh. P.  By raising these potentially meritorious evidentiary claims to raise on direct appeal, appellate counsel selected stronger claims than his claim concerning Detective Barnett's testimony.  In this situation, Rutledge has not overcome the strong presumption due appellate counsel's professional judgment.  *See McFarland*, 356 F.3d at 710-11.

The Ohio Court of Appeals rejected Rutledge's remaining claim – that his appellate counsel failed to challenge trial counsels' failure to stipulate to his "disability" – mainly due to reasons set forth in *State v. Sweeney*, Montgomery App. No. 16181 (Jan. 8, 1999).  *See* Doc. #4, Exh. Z at 3-4. In *Sweeney*, the Ohio Court of Appeals had rejected a similar challenge regarding a stipulation to a "disability" (*i.e.*, a prior conviction) in a case involving a charge of having a weapon while under a disability.  *Id*.  The Court of Appeals rejected this claim, explaining, "neither the state nor the trial court is bound by a defense stipulation as to the existence of a conviction.  And a defendant is not entitled to bifurcated proceedings, nor may he waive jury trial on the prior conviction element alone...."  *Id*. at 4 (citations omitted).  For these reasons, Rutledge's trial attorney did not provide constitutionally deficient performance by failing to stipulate to his prior conviction, and in turn, appellate counsel did not provide constitutionally deficient performance by omitting on appeal a challenge to trial counsel's failure to stipulate to Rutledge's "disability."  *See McFarland*, 356 F.3d at 710-11.

Accordingly, Rutledge's fourth ground for relief lacks merit.

24

**IT IS THEREFORE RECOMMENDED THAT:**

1.     Mark L. Rutledge's Petition for Writ of Habeas Corpus (Doc. #1) DENIED and
        DISMISSED; and

2.     The case be terminated on the docket of this Court.


July 21, 2006


                              _____s/ Sharon L. Ovington_____
                                    Sharon L. Ovington
                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).